MARGARITA, GERVASIO, AND PEDRO GONZÁLEZ ROMÁN ET AL., Plaintiffs and Appellants-Appellees, v. PLAZUELA SUGAR COMPANY, Defendant and Appellant, and MARÍA ROJAS GONZÁLEZ ET AL., Defendants; EMILIANO GONZÁLEZ ROJAS ET AL., Interveners and Appellants.

Nos. 5116 and 5121. Argued June 20, 1930.—Decided July 22, 1931.

*E. Martínez Avilés* for plaintiffs-appellants. *G. Zeno Sama* for defendant-appellee Plazuela Sugar Company. *Ulpiano Crespo Jr.* for interveners-appellants.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

Inasmuch as the facts involved in these appeals are somewhat complex, and the opinion filed by the district judge contains a clear and complete summary of the allegations sub-

mitted by the parties, we think it advisable to transcribe such a summary, as follows:

"Margarita González Román, jointly with others, brought the present action of denial of servitude of passage against Plazuela Sugar Company Ambrosio González Román, and others.

"The plaintiffs allege in their complaint that they are the owners of a property of four and one-half acres (*cuerdas*), which they describe, situate in the ward of Islote, Arecibo; that defendant Plazuela Sugar Company has, without the consent of the plaintiffs, laid down a railroad track on the said property crossing the latter from east to west, for the transportation of sugar cane from its own land and that of its planters to its factory located in Barceloneta; that said defendant has refused and still refuses to remove said track and also to compensate the plaintiffs, who have suffered damages which they estimate at $5,000. They pray that this defendant be adjudged to remove the said track and to pay the compensation sought.

"Defendant Plazuela Sugar Co. demurred to the complaint for insufficiency, but, on the demurrer being set for hearing, it withdrew this objection and moved for leave to file an answer.

"The defendant in that answer denied each and every allegation of the complaint, and set up by way of defense: That the 4½-acre property belongs exclusively to Ambrosio González Román and his children; that in 1907, while Ambrosio González and Josefa Román were the owners of said property, they made a contract with the defendant creating a servitude of passage over a railroad track on the said parcel along a strip of land which is described; that the plaintiffs are not the owners at present of said property, nor have they held the same for the last 35 years; that the defendant has had the continuous possession and use of the said right of way ever since the laying of the track in 1907, having in any case acquired it by prescription under section 544 of the Civil Code; that if the plaintiffs ever had or might have had any right, their action has prescribed in accordance with sections 1836 and 1864 of the Civil Code.

"Defendant Ambrosio González Román denied in his answer the facts alleged by the plaintiffs and essentially pleaded the same defenses set up by the other defendant; he specifically alleged that he is now and has been in possession of said property as owner, jointly with his children, for more than thirty-five years, publicly, peaceably and uninterruptedly.

"At this stage of the proceedings, Emiliano González Rojas, and others, asked obtained leave to intervene and file a complaint alleging: That they, jointly with Ambrosio González Román, are the owners of the aforesaid 4½-acre property; that defendant Plazuela Sugar Co. laid a railroad track which crosses the property described; that said track was originally laid pursuant to a mere verbal permit from Ambrosio González Román without any money or other consideration being paid therefor by defendant Plazuela Sugar Co., and without fixing any time limit or any other condition leading to the establishment of a permanent servitude of passage; that in 1917, and by a public deed, defendant Ambrosio González Román, acting for himself and as the father with *patria potestas* over his minor children, segregated from that property a parcel measuring 1,036 meters which they sold to the Plazuela Sugar Co. and over which the railroad track was laid; that the consideration for the contract was not a real one, as Plazuela Sugar Co. had failed to deliver, either to the interveners or to their father, the one hundred dollars agreed upon; that the interveners did not give their consent to that contract, because they all, except Emiliano and Francisco, were under 21 years of age and the conveyance was made without judicial authorization; that said parcel is actually worth $1,300; that Emiliano and Francisco González executed the agreement in question relying on the promise made to them by Agustín Balseiro, as director and agent of the Plazuela Sugar Co., to obtain for them an adjudication of ownership (*expediente de dominio*) of the 4½-acre tract and the record thereof and to intervene and defend these interveners in several suits, which promise was not fulfilled by the Plazuela Sugar Co. They pray for a judgment declaring that the 4½-acre property belongs exclusively to the interveners and to defendant González Román, and that the original plaintiffs in this action have no right, title, or interest in the same; and that the contracts regarding the railroad right of way and the sale of the parcel are nonexistent and void.

"The plaintiffs answered and specifically denied some of the averments of the complaint in intervention while admitting others. The Plazuela Sugar Co. also answered specifically denying some of the averments and admitting others, and pleaded as special defenses the identical ones set forth in their answer to the original complaint."

The court tried the case and heard the evidence on which it based its findings of fact, and applied the law that it con-

sidered to be appropriate. It rendered a judgment whereby it dismissed the complaint, with costs; dismissed the complaint in intervention as to the action prosecuted by Emiliano, Francisco, and Altagracia González Rojas, with costs; and sustained the motion to intervene as far as Pedro, José, Josefa, and Ramona González Rojas are concerned, declaring void as to them deed No. 81 of November 9, 1917, executed before notary Ulpiano Crespo, with costs against the defendants.

Plazuela Sugar Co. took an appeal on June 8, 1929.

Emiliano, Francisco, and Altagracia González Rojas filed a notice of appeal on June 10, 1929. In the same notice Eudulio González Rojas took an appeal concerning his rights against Plazuela Sugar Co.; and Pedro, José, Josefa, and Ramona González Rojas appealed from certain pronouncements made by the court in its statement of the case and opinion.

There also appears another notice of appeal filed by the plaintiffs on June 10, 1929.

Plazuela Sugar Co. in its brief submits for our consideration five assignments of error. The first of these refers to the finding made by the lower court that the 4½-acre tract involved in this case was conjugal property; the second relates to the holding, claimed to be based on an erroneous weighing of the evidence, that Plazuela Sugar Co. had acquired the railroad right of way by a title; the third is based on the failure to hold that the servitude had been acquired by prescription of twenty years; the fourth on the sustaining in part of the complaint in intervention; and the fifth on the imposition of costs.

In its argument under the first assignment, this appellant maintains that it was proved that Ambrosio González Román had acquired from his father the piece of property involved in this action while the former was unmarried; and although subsequently he again bought from his brothers the interest which they claimed to hold in said property, he himself does

not remember whether he was at the time single or married; but the fact is that the original purchase took place before his marriage, and hence the property was his separate estate. That being so, the plaintiffs—interveners in their capacity as heirs of Josefa Rojas—have no cause of action.

The court found that the 4½-acre property located in the ward of Islote belonged to Pedro González, married to Francisca Román; that Pedro González sold it to his eldest son Ambrosio, on January 26, 1892; that at Pedro's death, Ambrosio continued occupying and working said property, but that his brothers refused to recognize the sale and claimed their shares; that to avoid difficulties, Ambrosio bought again from all his brothers; and that at the time of this acquisition he was married.

In his testimony at the trial Ambrosio González sometimes said that he was married at the time he bought from his brothers their shares in the 4½-acre property, and at other times he stated that he did not remember whether or not he was married. He testified (Tr. of Rec., p. 38) that when he bought from his brothers he was already married to Josefa González, and similarly at page 40, where he states that he was single at the time he bought from his father and married when he bought again from his brothers.

The impression produced by the evidence is that Ambrosio González was married at the time of effecting a real purchase. There appears the record of a dominion title proceeding in which was included a 4.56-acre property which is doubtless the one involved in the present litigation, and in the initial petition it was stated that Ambrosio González Román bought said property and another tract while married to Josefa Rojas (Tr. of Ev., p. 21.) Then in another dominion title proceeding also relating to the same 4½-acre property, he averred that he had acquired the parcel by inheritance from his father Pedro González. In the deed of November 9, 1917, wherein he appeared for himself and as the representative of his minor children, to which deed Emiliano and Francisco

Román were also parties, he declared that he acquired. that property in part by inheritance from his father, and the remainder, "while already married to Josefa Román," by purchase from his brothers and coheirs.

The finding made by the district judge regarding the conjugal character of the property is logical and correct. No other conclusion could or should be reached.

The conclusion that some of the interveners, in their capacity as heirs of the wife of Ambrosio, have a cause of action, based on such capacity and on the fact that they were minors at the time their father executed the deed of November 9, 1917, and that the transfer or alienation of that portion of the estate of which they were co-owners is not valid or effective as to them because the father who represented them had no judicial authorization to make such alienation, derives as much from the deed itself (Tr. of Ev., pp. 57 to 63) as from the dominion title proceeding instituted by Ambrosio. In the deed he appeared in his own behalf and as the representative of his minor children Eudulio, Altagracia, Pedro, José, Josefa, and Ramona González Román (p. 58 Tr. of Ev.), and stated that he had acquired the 4½-acre property partly by inheritance from his father and partly, while married to Josefa Román, by purchase from his brothers; and he signed the deed for himself and as the representative of his said minor children. There is no showing that the court had ever authorized such conveyance.

As regards the second assignment, it must of course appear strange that one who has procured the execution of a deed conveying to him a strip of land for the laying of a railroad track should subsequently complain of a declaration or inference on the part of a court to the effect that, a servitude existing in the case, it had been acquired by a title and not by prescription, which latter mode of acquisition, once it is consummated, has the character of a title in contemplation of the civil law, as shown by the citations made by the appellant.

It seems that there was something more than a serious doubt in the mind of the court as to whether Ambrosio and his wife granted in 1907 a railroad right of way in favor of Plazuela Sugar Co., or whether he had the consent of his wife for that purpose. In short, we think that the court never believed such fact, and this is not to be wondered at, because there is no convincing proof thereof. What the court really believed is what appears in the following paragraph taken from the statement of the case and opinion:

"Some years afterward, in 1907, Ambrosio González and his wife, Josefa Román, agreed and stipulated with Plazuela Sugar Co. to authorize and allow the latter to lay a railroad track over the said property, for a definite consideration."

Did the court hold that a railroad right of way was constituted in 1907? Even more: has Plazuela Sugar Co. believed that the servitude of passage was created in 1907?

The court did not declare the servitude as established in 1907. From a reading of the opinion and from the emphasis laid therein upon the deed of 1917, it may be seen that the court considered that it is from 1917 that the constitution of the servitude may be spoken of or discussed, and this is, after all, what said notarial instrument effected.

Plazuela Sugar Co. did not believe that it really had a complete and sufficient legal title or right to such servitude, for which reason it was compelled to resort to the deed and to a proceeding in order to acquire title.

In other cases to which Plazuela Sugar Company has been a party this Court has made some declarations which it is proper to recall now.

In *Torres* v. *Plazuela Sugar Co.*, 24 P.R.R. 451, 453, it was said by this Court:

". . . The court found that the complainants consented and although we think that the proof, with respect to the consent of the principal complainant, the husband, is rather meagre and unsatisfactory on which to found a title, yet we shall assume with the court that such consent was given. Would such consent mean that

the complainants had forever parted with their full dominion of the land over which the railroad crosses? The answer seems to be given by section 446 of the Civil Code:

" 'Acts merely tolerated and those clandestinely executed, without the knowledge of the possessor of a thing, or with violence, do not affect possession.' "

In the instant case it was sought to prove that the wife of Ambrosio, jointly with him, had granted permission or consent for the laying of the track. There is scarcely anything more than the extremely doubtful and at times incoherent testimony of Ambrosio González himself, and, in the rest of the evidence, a number of circumstances that conflict with the statements of Ambrosio. It is not strange that the judge should have failed to attach much importance to such evidence and ignored the same. In doing so, he but acted with the tact and caution which guide a good trial judge.

In the *Torres* case, *supra,* this Court further said:

"There is some question as to the nature of the servitude in this case. Generally, a right of way is a non-apparent, discontinuous servitude. If this is so, the appellants are right in maintaining that under sections 546 and 547 of the Civil Code such a right can only be acquired by a written title. On the other hand, if by reason of the placing of the rails on the land the servitude becomes apparent, then there may be serious doubt if a written document is needed. Scaevola, Vol. X, p. 238. In any event, it was necessary for the appellee to prove a title of some sort. We shall briefly discuss whether the appellee, irrespective of any principle of estoppel, acquired a title in this case."

Personally, the writer of this opinion would go a little further and say that this kind of servitude of passage is, by reason of its use, always of a discontinuous character. In the present case there is no doubt that its acquisition required a written title. Section 539 of the Civil Code defines continuous and discontinuous servitudes as follows:

"Continuous servitudes are those the use of which is or may be uninterrupted, without the intervention of any human act.

"Discontinuous servitudes are those used at long or short intervals, and which depend upon human acts."

When a servitude *is used at long or short intervals, and depends upon human acts,* it can only be characterized as discontinuous, which characterization applies to an easement of way for the passage of trains transporting the crops from any particular estate.

A discontinuous servitude, whether apparent or not, can only be acquired by virtue of a title (section 546 of the Civil Code); and from a reading of section 547 of that Code there can be no doubt that the title must be one *establishing* a servitude, and that this species of servitude can not be acquired by prescription; which is perfectly logical, as the acts of use, not being continuous but having a commencement and an end which recur without perfect continuity, can not create a prescriptive right.

As regards the title, a charge upon real property being involved, we think that what the law contemplates is a deed such as is defined in section 50 of the Mortgage Law Regulations, that is, a public and authentic instrument upon which the person in whose favor the record is to be made bases his claim. We can not hold that section 547 of the Civil Code refers to the title in the sense in which this term is used in section 1853 of the said Code. Section 547 speaks of a title *establishing* the servitude. In section 1853, in the chapter dealing with prescription, reference is made to a *proper* (just) *title* as one which is legally sufficient *to transfer* the ownership or real right *the prescription of which is in question.*

The error specified in the second assignment has not been committed, and similarly as to the one set forth in the third assignment, for prescription is not a proper mode of acquiring a servitude of the character herein.

As regards the decision sustaining the complaint as to Pedro, José, Josefa, and Ramona González Rojas, who appear to be and actually are heirs of their mother, it having

been shown that they were minors at the time of the execution of the deed of 1917, and that the alienation or encumbrance was carried out without judicial authorization, the error assigned is nonexistent.

And as regards the imposition of costs, the court properly exercised its discretion.

The interveners have also appealed, and assigned eleven errors.

Some of these assignments relate to the questions of whether or not a consideration existed in the contract of sale incorporated in the public deed of November 9, 1917; whether or not such consideration was paid; and whether or not a servitude was created by virtue of said contract.

In this case no action for the annulment of a sale, or of revendication, is involved. Anything said predicated on a contrary assumption would serve no purpose. The action is one of denial of servitude, and if in arguing their case the parties choose to discuss a different action, the court is not bound to follow them into that field, which is not the proper one for argument.

It does not appear either that the court declared that the railroad right of way had been established in 1907. On the contrary, the impression is that the court neither made nor wished to make such declaration. The court mentioned an agreement or stipulation between Ambrosio González and his wife, on the one part, and Plazuela Sugar Co. on the other, to allow the latter to lay a track across their property, but it did not declare that this established a servitude, which is not created by a mere verbal permit. We agree with the appellants that there is nothing in the record to show that a definite consideration (*precio cierto*) existed in connection with such permit. For the purpose of this decision, we confirm the holding in *Albarrán* v. *Paz et al.*, 18 P.R.R. 933, 935, invoked by said appellants in their brief, thus:

". . . These important acts should have been consummated by writings properly executed by the parties, in order to be valid in

law and entitled to consideration by the courts, in a case where a servitude is sought to be established. Failing to show these facts in a proper manner, the plaintiff's case falls to the ground. (Civil Code, sec. 547.)''

The assignment of error numbered 9 is to the effect that judgment should have been rendered one way or the other as to intervener Eudulio González. It is urged that the latter was 22 years old at the time the deed was executed; that he did not sign the deed; and that his father represented him there without authority therefor.

We note that the judgment does not contain any pronouncement as to Eudulio González, whose true given name seems to be Julián. Really, in a so-called *nunc pro tunc* motion the attention of the court was called to this particular among others. The court amended some of the particulars save this one.

The overruling of the motion for nonsuit presented by the interveners is assigned as error.

It seems to us that the court properly exercised its discretion. It is true that the evidence for the plaintiffs was deficient, but not to such an extent as to constitute a sufficient justification for a dispassionate and fair judge to subject them to a nonsuit. Besides, no prejudice has been caused to the interveners by reason of such ruling.

As to the error assigned because of the failure to sustain in all its particulars the above-mentioned "*nunc pro tunc* motion," we would say that the omission incurred has already been pointed out. The remaining objections have reference to certain portions of the statement of the case and opinion. We do not think that any essential right of the appellants has been prejudiced by the failure complained of to include particulars, such as a statement in regard to the amount or definite price involved in the transaction, the absence of consideration in the contract, etc. Really, it is difficult to perceive what remedial purpose was sought by such

motion, save the amendment of some error of form, or the inclusion of Eudulio González Rojas.

The plaintiffs have also appealed and assigned four errors, namely: (a) The holding by the court that the 4½-acre property belongs to Ambrosio González and his children; (b) the finding that Ambrosio González had purchased the property from his father and thereafter from his brothers; (c) manifest error in adjusting the conflict in the evidence as regards the mode of acquisition of the respective rights claimed by the plaintiffs and the defendants in the property; (d) error for failure to sustain the complaint on the ground that the servitude is discontinuous and apparent and can not be acquired except by virtue of a title, and that the one held by the defendant does not derive from the true owners of the property.

Really, the first three assignments can be treated together and we shall endeavor to do so.

The plaintiffs can not complain if the court went fully into the question of ownership, since they themselves have been urging that question with great emphasis and as a basis for their action of denial of servitude.

We have considered the evidence introduced by the plaintiffs and it is not strange that the court did not give it any credence. One could hardly say less in order to assert ownership of a piece of property. The court could not rely on such evidence for the purpose of basing any decision thereon.

As to the court having made any statements applicable to a revendicatory action, we must recall something that took place at the trial. On page 9 of the transcript of the evidence the following appears with reference to plaintiffs' evidence:

"Judge: There is not involved here an action of revendication but one of denial of servitude, and the court makes this statement in order to prevent the record from being filled with evidence that is immaterial for the purpose of deciding as to the claim urged in

the complaints, namely, that Plazuela Sugar Co. has no right to lay a railroad track over any part of that property.

"Attorney Martínez Avilés: Were it not for the complaint in intervention, I would not put those questions. At bottom, this is almost an action of revendication as regards the interveners."

Really the evidence that was being offered, if admissible, rather applied to a revendicatory action than to an action of denial of servitude. The district judge, who weighed it correctly, expressed himself thus:

"In our opinion this evidence is not sufficient to prove, in an action of the character herein, his title to the property. But even granting that it was, such proof was successfully controverted by the evidence adduced by defendant Ambrosio González Román.

"The plaintiffs claim title by inheritance. It is true that they are joint heirs of Pedro González, but it is a fact that title to said property passed to defendant González Román. He bought first from his father, and then, when his brothers refused to recognize such purchase, he bought again from them their respective shares. This is the true situation, which is made manifest by the testimony on both sides.

"An action of denial of servitude is instituted expressly for the purpose of protecting and enforcing some property right, from which it follows that, if the right is not clear or does not exist, the action must fail."

In passing upon the questions of fact the court weighed the evidence correctly. We find that the first three errors assigned are nonexistent.

The basis for the fourth assignment of error is that, as discontinuous and non-apparent servitudes are acquired or established by virtue of a title, and as the one held by Plazuela Sugar Co. was not granted by the "actual and true owners of the property," the court ought to have so held.

As regards the person designated as Eudulio or Obdulio González, there appears from pages 65, 66, and 67 of the transcript of the evidence the admission in evidence, without any objection, of the birth certificate of Julián González Rojas, a legitimate son of Ambrosio González Román and his

wife, and born, according to such certificate, on June 18, 1895. This document was introduced in order to prove that Julián González Román, known as Obdulio, was 22 years of age at the time of the execution of the deed to the Plazuela Sugar Co., to wit, on November 9, 1917.

It appears from said deed, a copy of which appears on pages 57 to 63 of said transcript, that Ambrosio González Román was a party to that instrument and executed the same as the father with *patria potestas* over his minor children Obdulio, Altagracia, Pedro, José Josefa, and Ramona González Román, without there being any showing that he had any power of attorney from Obdulio or Julián for the execution of such deed.

That being so, the judgment must be modified in the sense of sustaining the complaint in intervention as to Julián González and the others, already included therein, and adjudging to be null and void, as to him, deed No. 81 of November 9, 1917, referred to in the opinion and judgment and executed before notary Ulpiano Crespo, Jr.; and the judgment is affirmed in all other respects.